**In the Matter of the WELFARE OF G.L.H., G.E.H., Jr.**

No. C8–99–1345.

Supreme Court of Minnesota.

July 20, 2000.

Susan Gaertner, Ramsey County Atty., Gwen Werner, Asst. Ramsey County Atty., Kelli Duehning, Certified Student Atty., St. Paul, for appellant.

Lochlan T. Stuart, St. Paul, for respondent.

Karen Garvin, St. Paul, Guardian Ad Litem.

Kenneth A. Malvey, Asst. Dakota County Atty., Hastings, for amicus curiae Minn. County Attys. Assn.

## OPINION

BLATZ, Chief Justice.

Respondent dismissed her court-appointed counsel on the day of her termination of parental rights (TPR) trial, and argues that her decision to do so did not constitute a voluntary and intelligent waiver of her statutory right to counsel. Because we conclude that determining the validity of a parent's waiver of counsel does not require application of the waiver procedure in the Minnesota Rules of Criminal Procedure, and can be determined by examining the circumstances surrounding the case, we hold that the district court did not abuse its discretion by not applying the criminal rule's waiver procedure. Further, we hold that the circumstances surrounding respondent's case demonstrate that her waiver was valid.

Respondent Tasha Patrice Jackson's two children, G.L.H., now twelve years old, and G.E.H., Jr., now ten years old, were adjudicated Children in need of Protection or Services (CHIPS) as to respondent in October 1997, and placed in foster care. Prior to the CHIPS adjudication, respondent's mother had brought the children to Children's Hospital in St. Paul, informing child protection services that respondent had been missing for a week, and that respondent was using cocaine.

In November 1997, the juvenile court approved a case plan outlining appropriate and available services to be offered to the family. At that time, respondent was on probation for a second-degree assault conviction involving a knife. In November 1998, a probation revocation hearing was held concerning respondent's testing positive for use of cocaine and failing to submit to additional drug testing.[1] After completion of a psychological evaluation of respondent in December 1998, the district court revoked respondent's probation and she was sent to the Minnesota Correctional Facility—Shakopee to serve her 42-month executed sentence for assault.

During the time between the CHIPS adjudication and the revocation of respondent's probation, respondent's social worker from the Ramsey County Community Human Services Department (RCCHSD) repeatedly attempted to reunite respondent and her children, but to no avail. The social worker finally concluded in September 1998 that even a trial home placement would not work after respondent failed on numerous occasions to pick up her children so that they might resume living with her and begin school. Efforts to reunite respondent with her children therefore ceased. On November 2, 1998, RCCHSD filed a TPR petition. A month later, respondent's 42-month sentence was executed.

Immediately before respondent's TPR trial commenced on February 1, 1999, respondent "fired" the Assistant Ramsey County Public Defender who had represented her for the previous one and one-half years. The court repeatedly asked respondent if she was certain about firing her attorney and she responded affirmatively. At one point, respondent stated that she wanted to employ her children's father's attorney, and was informed by the court that this would create a conflict of interest. Subsequently, she stated that the Assistant State Public Defender representing her on her assault appeal could also represent her at the TPR trial.

At the direction of the court, the prosecutor contacted respondent's state public defender, who told the prosecutor that "It

---

1. There had been two previous probation revocation hearings: July 21, 1997 and June 8, 1998, both prior to when the CHIPS petition was filed.

makes me very angry that [respondent said that I would represent her], because I had told her time and time again that I am not representing her on the termination case and will not be representing her." Both the state and the court then asked respondent if she was certain that she did not want the county public defender as standby counsel, to which she responded, "Correct." Immediately thereafter, the court commenced the TPR trial.

On the first afternoon of the trial, one witness was called, who gave partial testimony. The trial was then continued for a week so that respondent could contact witnesses on her behalf. The court subpoenaed respondent's witnesses for her. After the trial, in its Conclusions of Law filed February 25, 1999, the court concluded upon multiple statutory bases that it was in the best interests of respondent's children that respondent's parental rights be terminated.

A divided court of appeals panel reversed the district court without remanding for a new trial. *See In re G.L.H., G.E.H., Jr.,* 604 N.W.2d 97, 102 (Minn. App.1999). In its opinion, the court stated that the statutory right to counsel possessed by parents in TPR proceedings is analogous to the constitutional right to counsel possessed by criminal defendants. *See id.* at 100. Accordingly, the court applied a modified version of the waiver procedure as defined in Minn. R.Crim. P. 5.02, subd. 1(4), to the record. *See id.* The court of appeals determined that in order for respondent's waiver of counsel to be voluntary and intelligent, the district court was required to advise respondent as to (a) the nature of the charges; (b) the possible consequences of waiver; (c) the

advantages and disadvantages of counsel in TPR proceedings; and (d) other "essential facts," including the need to define "standby counsel" to respondent. *See id.* at 100–01. Because the district court did not apply this procedure to determine if respondent's waiver was voluntary and intelligent, the court of appeals held that the district court abused its discretion. *See id.* at 101–02. RCCHSD then petitioned to this court for further review.

## I.

■■■ Minnesota Statutes set forth a statutory right to counsel for parents and children in juvenile proceedings.[2] *See* Minn.Stat. § 260.155, subd. 2 (1998) (now codified, as amended, at section 260B.163, subd. 4 (Supp.1999)). Statutory interpretation is a question of law which we review de novo. *See Kornberg v. Kornberg,* 542 N.W.2d 379, 384 (Minn.1996). The statute provides in pertinent part that "[t]he child, parent, guardian or custodian has the right to effective assistance of counsel in connection with a proceeding in juvenile court." Minn.Stat. § 260.155, subd. 2. The Rules of Juvenile Procedure in effect on the date of the TPR hearing also recognize that children and parents in juvenile proceedings have a statutory right to counsel. *See* Minn. R. Juv. P. 40.01, subd. 1 (1999).[3]

In addition to creating the right to counsel, the legislature has enacted procedures for children to waive their right to counsel. Minnesota Statutes § 260.155, subd. 8(b) (1998) (now codified at section 260B.163, subd. 10(b) (Supp.1999)), provides that:

> Waiver of a child's right to be represented by counsel provided under the juvenile court rules must be an express waiver voluntarily and intelligently made

---

**2.** We note that the United States Supreme Court held in *Lassiter v. Department of Social Services,* 452 U.S. 18, 31–32, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), that there is no presumptive due process right to counsel for indigent parents in TPR proceedings. However, Minnesota has provided parents a statutory right to counsel. *See* Minn.Stat. § 260.155, subd. 2 (1998).

**3.** Minnesota Rule of Juvenile Procedure 40.01, subd. 1 (1999), provides in pertinent part: "The parent(s) and guardian of the child have the right to be represented by an attorney who shall act as their counsel."

by the child after the child has been fully and effectively informed of the right being waived. In determining whether a child has voluntarily and intelligently waived the right to counsel, the court shall look to the totality of the circumstances which includes but is not limited to the child's age, maturity, intelligence, education, experience, and ability to comprehend, and the presence and competence of the child's parents, guardian, or guardian ad litem. If the court accepts the child's waiver, it shall state on the record the findings and conclusions that form the basis for its decision to accept the waiver.

The 1999 Juvenile Rules of Procedure also contain a provision addressing waiver which is set forth in Rule 50.01, subds. 1, 2: [4]

1. A person entitled to counsel pursuant to Rule 40 and to any other right pursuant to these rules may waive the right to counsel and any other right only if the waiver is voluntarily and intelligently made. * * *

2. A waiver of counsel or any other right shall be on the record.

While both the statute and the rule address waiver of the right to counsel, they differ in several important respects. First, the statute, by its terms, applies only to a child's waiver of counsel. *See* Minn.Stat. § 260.155, subd. 8(b). As to other persons, the statute is silent in regard to the procedure to waive counsel. *See id.* In contrast, the rule recognizes that the right to waive counsel applies to any person entitled to counsel in juvenile proceedings. *See* Minn. R. Juv. P. 50.01, subds. 1, 2 (1999). Finally, unlike the statute's specific guidance to courts on how to determine if a child's waiver is voluntary and intelligent, the rule simply requires that a person's waiver of counsel in a juvenile proceeding must be "voluntarily

and intelligently made." *See* Minn.Stat. § 260.155, subd. 8(b); Minn. R. Juv. P. 50.01, subd. 1 (1999).

Like the juvenile statute and rule, the modified Rule of Criminal Procedure applied by the court of appeals also requires waivers of counsel to be "voluntary and intelligent." *See* Minn. R.Crim. P. 5.02, subd. 1(4). However, unlike the rule at issue, the criminal rule goes on to outline a specific waiver procedure. *See id.* Minnesota Rule of Criminal Procedure 5.02, subd. 1(4), provides:

If a defendant appearing without counsel charged with a felony or gross misdemeanor does not request counsel and wishes to represent himself or herself, the court shall ensure that a voluntary and intelligent written waiver of the right to counsel is entered in the record. * * * Prior to accepting any waiver, the trial court shall advise the defendant of the following: the nature of the charges, the statutory offenses included within the charges, the range of allowable punishments, that there may be defenses, that there may be mitigating circumstances, and all other facts essential to a broad understanding of the consequences of the waiver of the right to counsel, including the advantages and disadvantages of the decision to waive counsel. The court may appoint the public defender for the limited purpose of advising and consulting with the defendant as to the waiver.

Here, in concluding that the district court abused its discretion in allowing respondent to proceed pro se, the court of appeals applied a modified version of this criminal rule waiver procedure to the record. *See G.L.H.,* 604 N.W.2d at 101–02. However, because the court of appeals' opinion provides no reasoning for its conclusion that the criminal rule of procedure and juvenile rule of procedure are analo-

---

4. We note that the juvenile rules have been amended since this case was appealed, and no longer include the language contained in Minn. R. Juv. P. 50.01 (1999). *See* Order of Dec. 20, 1999, No. C4–97–1693 (effective January 1, 2000); Order of Dec. 29, 1999, No. C4–97–1693 (changing effective date to March 1, 2000). . . .

gous, we address respondent's argument that attempts to justify this analogy. Respondent claims that the Rules of Juvenile Procedure were established in accordance with the Rules of Criminal Procedure. Respondent asserts that this is evidenced by the fact that the enabling statute for the Rules of Juvenile Procedure, Minn. Stat. § 480.0595 (1998), references the enabling statute for the Rules of Criminal Procedure, Minn.Stat. § 480.059 (1998). On this basis, respondent argues that the court of appeals was correct in analogizing between the statutory right to counsel provided parents in TPR proceedings and a criminal defendant's constitutional right to counsel.

Respondent's contention is unavailing, however, because the reference relied on by respondent merely instructs this court to create and promulgate the Rules of Juvenile Procedure as the legislature had previously instructed the court to create and promulgate the Rules of Criminal Procedure. *Compare* Minn.Stat. § 480.0595 *and* § 480.059. Section 480.059, which is referenced in the enabling statute for the Rules of Juvenile Procedure, states that this court is to adopt rules of criminal procedure and states that the rules are not to enlarge or modify the substantive rights of any person. *See* Minn.Stat. § 480.059. In addition, section 480.059 establishes the makeup of the drafting committee, the distribution of the proposed rules, and how they are to be promulgated. *See* Minn. Stat. § 480.059, subds. 2, 4, 6. The statute is silent as to any substantive correlation between the juvenile and criminal rules.[5]

An analogy between waiver of the right to counsel in TPR proceedings and in criminal proceedings fails to recognize that the creation of a statutory right, while deserving of protection, is not necessarily the equivalent of a constitutional right. *See Libretti v. United States*, 516 U.S. 29, 48–49, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995). Further, the United States Supreme Court has noted that its precedents establish a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Lassiter v. Department of Social Services*, 452 U.S. 18, 26–27, 101 S.Ct. 2153 (1981) (citing *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428 (1967); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). Unlike criminal proceedings, TPR proceedings cannot deprive the parent of her physical liberty.

The rule of criminal procedure cited and relied upon by the court of appeals in its opinion is a codification of our opinion in *State v. Camacho*, 561 N.W.2d 160 (Minn. 1997). In *Camacho*, we addressed the waiver procedure required to assure that a criminal defendant's waiver of his constitutional right to counsel is knowing, voluntary, and intelligent. *See id.* at 173. The waiver procedure we outlined in *Camacho* was based on our interpretation of United States Supreme Court precedent recognizing the constitutional right to self-representation and the constitutional right to counsel in criminal cases. *See Camacho*, 561 N.W.2d at 170–73; (citing *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) and *Johnson v. Zerbst*,

---

**5.** Respondent's reliance on the authors' comments in the first edition of the Juvenile Law and Practice volumes is also misplaced. Commentary is nonbinding. *See First Constr. Co. v. Tri–South Mortgage Investors*, 308 N.W.2d 298, 300 (Minn.1981). Moreover, the majority of comments cited by respondent are parallels drawn by the authors between children's rights in delinquency proceedings and adults' rights in criminal proceedings. *See, e.g.,* John O. Sonsteng & Robert Scott, *Minnesota Practice—Juvenile Law and Practice,* § 4.01, at 49 (1985). Like criminal defendants, juveniles in delinquency proceedings have a constitutional right to counsel. *See In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). *Zerbst* held that

> [s]ince the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. * * * If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty.

*Zerbst,* 304 U.S. at 467–68, 58 S.Ct. 1019. In *Godinez* the U.S. Supreme Court further articulated the standard for waiver of the constitutional right to counsel in criminal cases:

> In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. In this sense, there *is* a "heightened" standard for pleading guilty and for waiving the right to counsel * * *.

*Godinez,* 509 U.S. at 400–01, 113 S.Ct. 2680 (citations omitted). It is clear from these cases that waiver of the constitutional right to counsel in criminal cases, where an individual's personal liberty is at stake, requires a heightened degree of caution in waiver procedure. We recognized this in *Camacho* and outlined the necessary waiver procedure accordingly.

Further, even in the context of a criminal defendant's waiver of his constitutional right to counsel, we have held waivers valid even though the district court failed to follow a particular procedure. *See State v. Worthy,* 583 N.W.2d 270, 275–76 (Minn. 1998); *State v. Brodie,* 532 N.W.2d 557, 557 (Minn.1995). In doing so, we have considered " 'the particular facts and circumstances surrounding [a] case, including the background, experience, and conduct of the accused.' " *Worthy,* 583 N.W.2d at 275–76 (quoting *Zerbst,* 304 U.S. at 464, 58 S.Ct. 1019); *see Brodie,* 532 N.W.2d at 557 (Minn.1995). While *Brodie* preceded *Camacho* and the adoption of Minn. R.Crim. P. 5.02, subd. 1(4), it occurred after the United States Supreme Court decided *Zerbst* and *Godinez,* and *Worthy* was decided subsequent to *Camacho.*

Based on the inherent and historical differences between constitutional and statutory rights, and case precedent relating to each, we conclude that the determination of a parent's valid waiver of the statutory right to counsel in TPR proceedings does not necessitate the application of the procedure set forth in Minn. R.Crim. P. 5.02, subd. 1(4). We therefore hold that the district court did not abuse its discretion by not applying the waiver of counsel procedures of the criminal rule. In addition, we are guided by our holdings in *Worthy* and *Brodie,* and hold that the determination of whether a parent's waiver of counsel in a TPR proceeding is voluntary and intelligent can be based on the surrounding circumstances of the case.

## II.

Having determined that the validity of a parent's waiver of her statutory right to counsel in TPR proceedings can be determined by examining the surrounding circumstances of the case, we now examine the record to determine whether respondent's waiver was voluntary and intelligent. We will overturn a district's court's finding of a valid waiver of the right to counsel only if that finding is clearly erroneous. *Cf. Worthy,* 583 N.W.2d at 276 (applying the clearly erroneous standard for appellate review of a district court's finding of valid waiver in a criminal proceeding).

Although this case involves a statutory right to counsel in a civil matter, the circumstances surrounding respondent's case are similar to those in *Brodie.* 532 N.W.2d at 557. In *Brodie,* the defendant "fired" his public defender and then ap-

pealed his conviction, arguing that his waiver of counsel was not knowing and intelligent. *See id.* This court rejected the defendant's argument, stating that

> [t]his is not a case in which the record is silent on whether defendant knowingly and voluntarily waived his right to counsel. Defendant was in fact given counsel and he then "fired" counsel. The record is clear that defendant knew that he did not have a right to a different public defender but would have to represent himself if he did not accept the services of the public defender.

*Id.* Like the defendant in *Brodie,* here respondent was appointed counsel and "fired" him on the morning of her TPR trial. The district court repeatedly asked respondent if she was certain she wanted to dismiss her counsel and represent herself, and she repeatedly stated that she did.

In addition, respondent had the benefit of counsel for one and one-half years before firing him. In *Worthy,* we found the co-defendants' waiver of counsel valid even though they were represented by counsel for only one and one-half months before the date of trial. *See Worthy,* 583 N.W.2d at 276. Also, similar to the co-defendants in *Worthy,* respondent had previous experience in the criminal justice system, and had been represented at six prior hearings in juvenile court. Finally, like the *Worthy* co-defendants, respondent was informed that if she fired her attorney she would have to proceed pro se and cross-examine her own witnesses. *See id.*

The questions respondent asked during her examination of witnesses provide further evidence of her awareness of the nature and consequences of the TPR trial. Moreover, respondent's express statements to the court indicate that she was aware that neglect and drug abuse were the grounds for the petition to terminate her parental rights and that the loss of her parental rights was the possible consequence of the TPR trial.

Accordingly, we hold that the district court's determination that respondent waived her statutory right to counsel is supported by the record. The circumstances surrounding her waiver demonstrate that it was voluntary and intelligent, and therefore valid.

Reversed.