STATE of Minnesota, Respondent,

v.

Christopher GARIBALDI, Appellant.

No. A06–116.

Court of Appeals of Minnesota.

Feb. 6, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Michael F. Cromett, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; HUDSON, Judge; and HUSPENI, Judge.

## OPINION

HUSPENI, Judge.*

Appellant challenges his conviction for felony test refusal, arguing that the district court did not obtain an adequate waiver from him of his right to counsel before proceeding with a bench trial on stipulated facts. Appellant argues that a written waiver of the right to counsel was required and that a comprehensive inquiry on the record did not occur. Appellant also argues that the district court erred by allowing private counsel who had already filed a certificate of representation to withdraw without making any appearance in court or filing a motion. Because the record does not show that appellant had an adequate opportunity to consult with his previous counsel before the waiver, standby counsel was not appointed, and the district court failed to conduct an on-the-record inquiry of the factors listed in Minn. R.Crim. P. 5.02, subd. 1(4), we conclude that appellant's waiver was not knowing, voluntary, and intelligent, and we reverse and remand for a new trial.

## FACTS

Appellant Christopher Garibaldi was charged with felony first-degree driving while impaired (DWI), felony first-degree refusal to submit to chemical testing, and gross-misdemeanor driving after license cancellation. The charges arose from an incident in February 2005, when police found Garibaldi slumped in the driver's seat of a car with the motor running, stopped in the middle of the street. Paramedics on the scene reported that the driver smelled strongly of alcohol and police noticed a strong odor of marijuana coming from inside the vehicle. Responding police, who assisted Garibaldi out of the vehicle, observed that his eyes were glassy and bloodshot, that his movements were slow and lethargic, and that he appeared to have urinated in his pants. Because he was unable to stand or walk without assistance, they did not administer field sobriety tests.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

· · Minn. Const. art. VI, § 10.

Police arrested Garibaldi, read him the implied consent advisory, and gave him about one-half hour to contact an attorney. He refused to take a breath test. He was released, but charged four months later.

Garibaldi made his first appearance in district court on June 21, 2005. He was represented by Richard Enga, a private attorney who filed a certificate of representation with the district court on the same day.[1] Enga stated that this was allegedly Garibaldi's fourth qualifying offense. An omnibus hearing and trial date were scheduled.

On July 18, Garibaldi appeared without an attorney at a pretrial hearing before a different district court judge. The following exchange took place:

COURT: Mr. Garibaldi, Rick Enga doesn't represent you anymore?

DEFENDANT: No, Your Honor. I—we couldn't come to an agreement. Actually, I couldn't afford him and that was pretty much the nature of the—

COURT: Was there a certificate of representation filed or did someone just put that on there?

DEFENDANT: You know, Rick was supposed to show up today.

PROSECUTOR: Yes, there was. I have a copy of it.

CLERK: Back on June 21st.

COURT: Well, he technically still should be on the case but you say no?

DEFENDANT: Yeah. Like I said, it was a financial situation. I have a lot of other things. That's pretty much what's going on.

COURT: So you're going to represent yourself?

DEFENDANT: Yes. I'm going to do the best I can, Your Honor.

COURT: Okay.

The district court informed Garibaldi that he would "be better off if [he] had an attorney for trial." The court did not question Garibaldi further on his decision to represent himself, mention the possibility of applying for a public defender, or offer a form for Garibaldi to sign to waive representation by an attorney.

On August 11, Garibaldi appeared pro se for a stipulated-facts trial before a third district court judge.[2] A prosecutor who was making his first appearance in the case stated to the district court that "Mr. Garibaldi is present[ly] representing himself. He was formerly represented, according to my notes, by Rick Enga of the Public Defender's Office [sic]. That was back in his first appearance on January 21[sic]." The prosecutor stated that before the hearing, he had advised Garibaldi of his right to an attorney or the right to apply for a public defender. He stated that he "went into additional detail" with Garibaldi about the waiver of his right to an attorney. He indicated that he would defer to the district court to proceed with whatever waivers the court thought necessary. The following exchange took place:

COURT: Mr. Garibaldi, first of all, do you understand everything that Mr. Myren said here today?

DEFENDANT: Yes, I do.

COURT: Okay. And I guess the first thing we need to address is, do you wish

---

1. Enga never made another appearance on Garibaldi's behalf or sought court approval to withdraw from the case. He died after an illness in early September 2005.

2. Although the parties agreed to a stipulated-facts trial, the district court permitted Garibaldi to testify in his own defense.

to proceed, whether with a trial or some variation on a trial, without having a lawyer to represent you?

DEFENDANT: Yes, I would.

COURT: Okay. And you understand, although Mr. Myren has talked with you today and because you are pro se, he's dealing directly with you and explained some things to you, do you understand he's not your lawyer?

DEFENDANT: I do.

COURT: In fact, he's the prosecutor who is on the other side; do you understand that?

DEFENDANT: Yes, I do.

The district court then explained to Garibaldi his rights to a jury trial, confrontation of witnesses, and the burden of proof at trial, as well as the procedure for a stipulated-facts trial, to which Garibaldi agreed. The district court did not question Garibaldi further on the record concerning the waiver of counsel or provide a written waiver form to him. The prosecutor then further questioned Garibaldi:

PROSECUTOR: Do you understand that you're waiving your right to an attorney of any kind in this case by representing yourself, correct?

DEFENDANT: Yes, I do.

PROSECUTOR: Do you understand that you're entitled to the services of a public defender because you qualified before, would probably qualify again?

DEFENDANT: Yes.

PROSECUTOR: Okay. But you're waiving that right even to a public defender?

DEFENDANT: Yes, I do.

At the stipulated-facts trial Garibaldi introduced exhibits of medical records show-ing that at the time of the offense, he had a prescription for valium for back and leg muscle pain and headaches arising from his injury in a 2004 vehicle accident. He argued that this pain caused him to use alcohol after a period of abstinence following his last DWI conviction in about 1998. He testified that on the night of the offense, he made a bad decision by attempting to get to the emergency room under the influence of drugs.

The district court found Garibaldi guilty of test refusal and driving after cancellation and not guilty of DWI. The district court sentenced him to 42 months, stayed, and 240 days served, with 30 days in the workhouse and the remainder on electronic home monitoring and probationary conditions including remaining law abiding and not using alcohol or illegal or nonprescribed drugs. This appeal followed.

## ISSUE

Was Garibaldi's waiver of his right to counsel at his stipulated-facts trial knowing, voluntary, and intelligent when the record does not reflect the extent of his opportunity to consult with previous counsel, no standby counsel was appointed, and the district court did not conduct an adequate on-the-record inquiry of the elements of waiver in Minn. R.Crim. P. 5.02, subd. 1(4)?

## ANALYSIS

The United States and Minnesota constitutions guarantee a criminal defendant the right to the assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. A defendant may waive the right to counsel if the waiver is competent and intelligent. *State v. Worthy*, 583 N.W.2d 270, 275 (Minn.1998) (citing *John-*

*son v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). "[T]he court must 'satisfy itself that the [defendant's] waiver ... is knowing and voluntary.'" *State v. Camacho,* 561 N.W.2d 160, 171 (Minn.1997) (alteration in original) (quoting *Godinez v. Moran,* 509 U.S. 389, 400, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993)); *see also State v. Krejci,* 458 N.W.2d 407, 412 (Minn.1990) (stating that the district court has the duty to ensure that a defendant's waiver of the right to counsel is knowing and intelligent). To determine whether a waiver of the right to counsel is knowing, voluntary, and intelligent, district courts "should comprehensively examine the defendant regarding the defendant's comprehension of the charges, the possible punishments, mitigating circumstances, and any other facts relevant to the defendant's understanding of the consequences of the waiver." *Camacho,* 561 N.W.2d at 173.

Since 1965, in order to assure that a defendant's waiver of counsel comports with constitutional requirements, Minnesota law has stated a requirement that "[w]here counsel is waived by a defendant, the waiver shall in all cases be made in writing, signed by the defendant, except that in such situation if the defendant refuses to sign the written waiver, then the court shall make a record evidencing such refusal of counsel." Minn.Stat. § 611.19 (2006); *see* 1965 Minn. laws ch. 869, § 6, at 1633. Effective in 1999, rule 5.02 of the Minnesota Rules of Criminal Procedure was also amended to add the requirement

that the district court obtain a written waiver, or make an oral record of waiver after the defendant refuses to sign a written waiver.[3] *See* Minn. R.Crim. P. 5.02, subd. 1(4) (stating that "[i]f a defendant ... does not request counsel and wishes to represent himself or herself, the court shall ensure that a voluntary and intelligent written waiver of the right to counsel is entered in the record."). Minn. R.Crim. P. 5.02, subd. 1(4), additionally states that before accepting a waiver, the district court "shall" advise the defendant of

> the nature of the charges, the statutory offenses included within the charges, the range of allowable punishments, that there may be defenses, that there may be mitigating circumstances, and all other facts essential to a broad understanding of the consequences of the waiver of the right to counsel, including the advantages and disadvantages of the decision to waive counsel.

In the decade before rule 5.02 was revised, the Minnesota Supreme Court decided a series of cases dealing with the validity of a defendant's waiver of counsel. In 1990, that court concluded that a defendant's waiver was knowing and intelligent when the record showed that the defendant had delayed trial, interacted with 12 different judges, had various conversations with two public defenders, and had refused to accept representation from the public defender's office. *Krejci,* 458 N.W.2d at 412–13. The district court also appointed standby counsel to assist the defendant at trial. *Id.* at 413.

---

**3.** The prior version of Minn. R.Crim. P. 5.02 did not reflect a defendant's right to waive counsel in gross misdemeanor and felony cases, although the comments to that rule acknowledged a defendant's right to represent himself and waive counsel as long as counsel remains available for assistance. Minn. R.Crim. P. 5.02 cmt.; *see* Minn. R.Crim. P. 5.02 cmt. (1998) (amended 1998, effective Jan. 1, 1999). Both the current and prior versions of the rule contemplate a waiver procedure at the defendant's first district court appearance but have also been applied at later proceedings.

In *State v. Brodie,* 532 N.W.2d 557, 557 (Minn.1995), the supreme court held that a defendant knowingly and voluntarily waived his right to counsel when he was given counsel but fired his attorney, and the original public defender assisted the defendant at trial.

In *Camacho,* the supreme court upheld a defendant's waiver of counsel when the record showed that the defendant extensively discussed the issue of waiver with his attorney, who told the defendant he disagreed with the decision to proceed pro se. 561 N.W.2d at 173. Standby counsel also assisted the defendant at trial by consulting on evidentiary issues and developing the record on legal and strategic questions. *Id.* at 167.

Finally, in *Worthy,* the supreme court upheld two defendants' waivers of their right to counsel when they had previously been given competent counsel who made pretrial motions, including motions to suppress evidence, and represented the defendants until they unequivocally fired their attorneys the morning of the scheduled trial. 583 N.W.2d at 274. The *Worthy* court concluded that the waivers were valid even though the district court had failed to make an on-the-record inquiry, including a recitation of the charges or the potential punishments. *Id.* at 276. In so doing, the court stated the importance of " 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.' " *Id.* at 275–76 (quoting *Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023).

The waivers of the right to counsel in *Krejci, Brodie, Camacho,* and *Worthy* were all declared valid, despite being challenged on appeal. But each of these cases differed in some aspect from the one we now consider. First, each predates the amendment of rule 5.02. Second, in each case the appellants had either extensive contact with defense attorneys or stand-by counsel or both. Garibaldi here had neither.

We rely most strongly for guidance on a case released a year after the change in rule 5.02, wherein the Minnesota Supreme Court held that a parent's statutory waiver of counsel in a termination of parental rights (TPR) proceeding was voluntary and intelligent. *In re G.L.H.,* 614 N.W.2d 718, 724 (Minn.2000). The supreme court rejected the argument that rule 5.02 applied by analogy in TPR proceedings, rejecting the claim that the waiver was not valid because the district court had failed to follow the procedures specified in the rule. Id.; *see In re G.L.H.,* 604 N.W.2d 97, 101 (Minn.App.1999), *rev'd,* 614 N.W.2d 718 (Minn.2000). The supreme court stated:

> The [TPR] statute is silent as to any substantive correlation between the juvenile and criminal rules.
>
> An analogy between waiver of the right to counsel in TPR proceedings and in criminal proceedings fails to recognize that the creation of a statutory right, while deserving of protection, is not necessarily the equivalent of a constitutional right.

*G.L.H.,* 614 N.W.2d at 722 (footnote omitted). Despite the distinction drawn between criminal and juvenile rules, and between statutory and constitutional rights, the court observed that

> even in the context of a criminal defendant's waiver of his constitutional right to counsel, we have held waivers valid even though the district court failed to follow a particular procedure. *See State v. Worthy,* 583 N.W.2d 270, 275–76

(Minn.1998); *State v. Brodie*, 532 N.W.2d 557, 557 (Minn.1995). In doing so, we have considered " 'the particular facts and circumstances surrounding [a] case, including the background, experience, and conduct of the accused.' " *Worthy*, 583 N.W.2d at 275–76 quoting *Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019, 82 L.Ed. 1461; *see Brodie*, 532 N.W.2d at 557 (Minn.1995). While *Brodie* preceded *Camacho* and the adoption of Minn. R.Crim. P. 5.02, subd. 1(4), it occurred after the United States Supreme Court decided *Zerbst* and *Godinez*, and *Worthy* was decided subsequent to *Camacho*.

Based on the inherent and historical differences between constitutional and statutory rights, and case precedent relating to each, we conclude that the determination of a parent's valid waiver of the statutory right to counsel in TPR proceedings does not necessitate the application of the procedure set forth in Minn. R.Crim. P. 5.02, subd. 1(4). . . . In addition, we are guided by our holdings in *Worthy* and *Brodie*, and hold that the determination of whether a parent's waiver of counsel in a TPR proceeding is voluntary and intelligent can be based on the surrounding circumstances of the case.

*Id.* at 723.

Ultimately, the supreme court concluded that the parent's waiver of the right to counsel was voluntary and intelligent after she had been provided with counsel for one-and-one-half years, she had previous experience with the criminal justice system, and she was told that if she fired her attorney she would have to cross-examine her own witnesses. *Id.* at 724. Nonetheless, she chose to fire her attorney the morning of the TPR trial. *Id.* Thus, in *G.L.H.*, the supreme court endorsed the importance of a fact-specific examination in determining whether a defendant's waiver of the right to counsel was knowing, voluntary, and intelligent.[4]

■ Although we recognize that the supreme court in *G.L.H.* extended its analysis beyond the precise issue presented, we follow that guidance and, consistent with all previous opinions addressing the issue of waiver, examine the specific facts of this case. We note initially that here the district court did briefly question Garibaldi about his waiver of counsel. But, after careful consideration of both all of the facts in this case and all of the guidance of case law, we cannot conclude that this record supports a determination that Garibaldi knowingly, voluntarily, and intelligently waived his right to counsel. First, in contrast to many of the cases cited to guide us, the record is silent regarding whether Garibaldi was sufficiently informed by previous counsel of the consequences of representing himself. *Cf. Worthy*, 583 N.W.2d at 276 (indicating that the district court could reasonably presume that defendants were fully advised by their previous attorney on the consequences of proceeding pro se when they "were provided with competent legal representation for over a month before trial and took full advantage of that representation up until the morning of their scheduled trial date"). Even though Garibaldi, like the defendants in *Worthy*, had previous experience with

4. After *G.L.H.*, this court held that a defendant's constitutional right to counsel was violated when no record of his waiver of counsel was made. *State v. Hawanchak*, 669 N.W.2d 912, 915 (Minn.App.2003). This court in *Hawanchak* cited rule 5.02 and stated that when no record existed of a defendant's waiver of counsel, it was impossible to determine whether a waiver was knowing and intelligent. *Id.* at 914–15.

the criminal justice system, his previous attorney made only a brief scheduling appearance before the district court and did not continue to represent Garibaldi at the pretrial hearing a month later, nor during the time leading up to the stipulated-facts trial two months after that.[5] Second, unlike the defendants in *Worthy* and *Brodie*, Garibaldi did not unequivocally fire his attorney shortly before trial. *Cf. Worthy*, 583 N.W.2d at 274; *Brodie*, 532 N.W.2d at 557. Rather, he merely indicated at a pretrial hearing that he "couldn't afford" his attorney, but that the attorney was "supposed to show up" at the hearing. Third, again unlike the defendants in *Worthy* and *Brodie*, Garibaldi was not offered the benefit of standby counsel to assist him before or during trial.

▮ Further, we recognize that even after *G.L.H.*, an opinion issued after modification of Minn. R.Crim. P. 5.02, subd. 1(4), that rule must have some continuing role in the process of evaluating whether a defendant validly waived his right to counsel, especially as the trial itself draws close. *See Iowa v. Tovar*, 541 U.S. 77, 88–89, 124 S.Ct. 1379, 1387, 158 L.Ed.2d 209 (2004) (stating that "[a]s to waiver of trial counsel, we have said that before a defendant may be allowed to proceed *pro se*, he must be warned specifically of the hazards ahead.") (citing *Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)). We conclude that, here, the district court's cursory examination of Garibaldi on the record at his stipulated-facts trial did not meet the "heightened degree of caution in waiver procedure" noted by the supreme court in

*G.L.H.* and codified in rule 5.02. *See G.L.H.*, 614 N.W.2d at 723; *cf. Camacho*, 561 N.W.2d at 173 (stating that "[t]here is no question that the [district] court conducted a very thoughtful and comprehensive examination ... regarding the facts relevant to [the defendant's] understanding of his waiver of the right to counsel.").

On the day of the stipulated-facts trial, the prosecutor stated that he had advised Garibaldi of his right to an attorney of his choosing or a public defender and the waiver of that right. But this discussion does not appear on the record. The prosecutor then stated that he would "defer to the [c]ourt at this time with respect to whatever waivers [the court] think[s] are necessary." The district court asked Garibaldi whether he wished to proceed to trial without having an attorney to represent him, and Garibaldi replied that he did. The court then replied, "Okay." The court asked Garibaldi whether he understood that the prosecutor was representing "the other side," whether he had "any questions about the various options that [the prosecutor] ha[d] laid out" and whether he understood that he was charged with a felony. Garibaldi responded, "Yes, ma'am." The court then again stated, "Okay." To the extent that Garibaldi's answer is ambiguous, the record does not resolve the ambiguity.

But the district court never questioned Garibaldi further about his waiver of the right to counsel, proceeding instead to explain Garibaldi's right to trial and the different kinds of trials, including the procedure in a stipulated-facts trial. The

---

**5.** Despite Garibaldi's statement to the district court at the pretrial hearing that he was no longer represented because he "couldn't afford" his previous attorney, the record contains no indication that the district court offered him an application for a public defender. The prosecutor at the stipulated-facts trial mistakenly informed the court that Garibaldi had been previously represented by a public defender.

prosecutor then asked Garibaldi again whether he waived his right to an attorney; he indicated that he did. But the record contains no indication that the district court conducted any further on-the-record examination, such as informing Garibaldi of the range of possible punishments for his offense and the advantages and disadvantages of his decision to waive counsel. Although one may "tease" from the record an implication that the prosecutor may have informed Garibaldi of these matters, the failure to create an adequate on-the-record inquiry under these circumstances falls short of the compliance with rule 5.02 that even a liberal reading of *G.L.H.* would require. And we are unwilling to treat an off-the-record conversation with the prosecutor, counsel for the adverse party, as remedying the lack of a rule 5.02 inquiry by the court.

In deciding as we have in this case, we are keenly aware of both the specific requirements of the rule and the policy reasons for accepting less than strict adherence to those requirements. We are not insensitive to the very real time pressures present each day in the trial courts of the state. And a temptation to cynicism might lead a reviewing court to be reluctant to provide a defendant with "two bites at the apple," a chance to retry a case based on a contention that a previous waiver of counsel was not voluntary, knowing, and intelligent. But adherence to the mandates of the rule should be required when addressing the issue of waiver, especially when, as here, the record is unclear on the extent of Garibaldi's previous representation, and standby counsel was not appointed. Further, a thorough and careful waiver procedure will ultimately result in conservation of time and treasure, and will reduce the emotional toll extracted from all partici-pants in the judicial system. Conversely, acceptance of an inadequate waiver invites not only appeal, but reversal and remand for a new trial.

Because we reverse and remand for a new trial on the basis that Garibaldi's waiver of counsel was not knowing, voluntary, and intelligent, we need not address his further argument that the district court erred by allowing his previous counsel to withdraw without approval of the district court.

## DECISION

The record does not support a determination that Garibaldi's waiver of counsel was knowing, voluntary, and intelligent. The record does not show that he had sufficient opportunity to consult with counsel regarding his desire to represent himself, he was not offered the benefit of standby counsel, and the district court failed to conduct an adequate on-the-record examination on the waiver of his right to counsel.

**Reversed and remanded.**