STATE of Minnesota, petitioner,
Appellant,

v.

Barnell WORTHY, Respondent,

Marvin McKinnis, a/k/a Tom
Jackson Respondent.

Nos. C8–96–1928, C3–96–1948.

Supreme Court of Minnesota.

Aug. 20, 1998.

272

Hubert H. Humphrey, Atty. Gen., Thomas Rolf Ragatz, Asst. Atty. Gen., St. Paul, David M. Gilbertson, Chippewa County Atty., Montevideo, for appellant.

John M. Stuart, State Public Defender, Cathryn Middlebrook, Asst. State Public Defender, Minneapolis, Lawrence W. Pry, Asst. State Public Defender, St. Paul, for respondent McKinnis.

## OPINION

GILBERT, Justice.

In this case, respondents Barnell Worthy and Marvin McKinnis voluntarily and without justification absented themselves from the courtroom after their criminal trial had commenced. On the morning the trial started, both Worthy and McKinnis attempted to delay the proceeding by firing their court-appointed attorneys without good cause. They then used the court's denial of their request for a continuance to obtain private attorneys as an excuse to refuse to remain in the courtroom. On appeal, Worthy and McKinnis asserted that under such circumstances, the trial court was required, against Worthy's and McKinnis's express wishes, to force Worthy and McKinnis to accept the appointed attorneys. The court of appeals agreed, concluding that conducting a criminal trial with voluntarily absent pro se defendants and no one advocating for their interests violates the United States Constitution. We disagree and reverse.

On the night of March 28, 1996, McKinnis, Worthy, and another man drove a moving truck from Minneapolis to Montevideo, Minnesota to burglarize a tire store. Three more accomplices followed in a pickup truck. All six arrived at the store after midnight on March 29. Jamain Ware, one of the accomplices in the pickup truck, was dropped off in front of the store while the other two accomplices stayed in the pickup truck. McKinnis backed the moving truck into the store's large overhead doors, breaking the doors and creating a space between the ground and the bottom of the door. Then, while Worthy and Ware stood outside the store as lookouts, McKinnis crawled inside the store and slid the tires out.

Meanwhile, at approximately 1:15 a.m., the store owner, George Modderman, and deputies from the Chippewa County Sheriff's Office, responded to the store's silent alarm. When Ware spotted the police car, he shouted and everyone ran. Ware, McKinnis, and Worthy made their way back to the road where their accomplices picked them up in the pickup truck. When Modderman and the deputies arrived at the store, they found the moving truck backed into the door, but no one at the scene. They saw fresh footprints leading to a muddy field next to the store and up to the road.

Shortly afterwards, a Chippewa County Sheriff's Deputy saw the pickup truck heading east and ordered the driver to pull over. There were three people in the cab of the pickup truck, and McKinnis, Worthy, and Ware were in the back. McKinnis, Worthy, and Ware were wearing dark clothing and had fresh mud covering their shoes and pant legs. In the pickup truck the deputies found a tire iron, a flashlight, three wet pairs of gloves, a pager, two pairs of mittens, four stocking caps, a cellular phone, bolt cutters, a

tool to remove semi tires, an electronic night-stick, and a wrecking bar. All six people in the pickup truck were arrested and taken to the sheriff's department.

Worthy and McKinnis were subsequently charged with burglary, criminal damage to property, and attempted theft. Both had their first appearance in court on April 1, 1996, at which time the trial court ordered public defenders to represent them. At their arraignments on April 15, both Worthy and McKinnis pled not guilty and made speedy trial demands. In the ensuing weeks, their attorneys made various pretrial motions on their behalf. These included motions on Worthy's behalf for elimination of bail, dismissal of the complaint for lack of probable cause, suppression of evidence, and change of venue. McKinnis's attorney moved to dismiss the complaint for lack of probable cause and for the suppression of evidence. The court denied all motions and a pretrial conference was held for both Worthy and McKinnis on May 6, 1996.

The trial court set McKinnis's trial to begin on May 15. Worthy's trial date was June 4. McKinnis attempted to withdraw his speedy trial demand. On May 10, against the advice of his attorney, McKinnis moved to consolidate his trial with Worthy's. McKinnis's attorney indicated to the trial court that McKinnis wanted to avoid being the first of the multiple defendants charged to be tried. The court granted the motion to consolidate, and the jury trial commenced on May 15 and concluded on May 16.

On the first morning of Worthy's and McKinnis's trial, their court-appointed attorneys informed the court that Worthy and McKinnis had indicated that they would not participate in their trial. After the first prospective juror was questioned, the court brought Worthy and McKinnis to the courtroom. Both men told the court that they wanted to hire private attorneys because they were not satisfied with the way their attorneys were representing them. Specifically, Worthy and McKinnis fired their attorneys because the attorneys told them that they did not have a strong case. Worthy and McKinnis could not provide the court with certificates of representation from any new

attorney, or even the names of potential attorneys.

After refusing to grant a continuance at this late stage, the trial court explained to Worthy and McKinnis that if they rejected representation by their court-appointed attorneys they could proceed pro se with their former attorneys acting as advisory attorneys. The court also told them that they would have to be present when the jury was sworn, but that they could then go back to their cells if they chose. Contrary to the advice of the trial court, both Worthy and McKinnis then fired their attorneys and refused to participate in their trial. The court then appointed their former attorneys as advisory attorneys and Worthy and McKinnis left the courtroom. Voir dire continued with questions being posed by the prosecutor and by the court. Soon after, Worthy and McKinnis rehired and then refired their attorneys.

That afternoon, Worthy and McKinnis reconfirmed that they wanted to fire their court-appointed attorneys and hire private attorneys and that neither of them would participate in the trial. The trial court concluded that both Worthy and McKinnis were attempting to delay the trial because they would like to be the last of the six people charged to stand trial. Their trial proceeded without Worthy and McKinnis in the courtroom. Although the advisory attorneys did not participate in voir dire, the trial court questioned prospective jurors and excused several based on their potential bias. Worthy and McKinnis were present when the jury was sworn.

On the second day of trial, Worthy and McKinnis again refused to participate and the trial court indicated that it had not heard from any private attorney acting on their behalf. During trial, the advisory attorneys were present but did not make objections, call or cross-examine witnesses, or give opening or closing arguments. The state made an opening statement, a closing argument, and called five witnesses.

When the trial court was ready to read the verdict, the court, through the sheriff's department, asked if Worthy and McKinnis

were willing to appear for the receiving of the verdict. The trial court stated that Worthy and McKinnis "vehemently and with some obscenity exclamations of various types" refused to participate in receiving the verdict. The court determined that it would not be in the interests of justice to require Worthy and McKinnis to be present for the reading of the verdict. The court reasoned that they both would likely "behave in a manner that would demean the dignity of the justice system" and they would not voluntarily appear in court unless actual physical force would be used by the sheriff's department. The court concluded that requiring Worthy's and McKinnis's presence under these circumstances would be inappropriate. The jury found McKinnis guilty of second-degree and third-degree burglary,[1] attempted theft,[2] and first-degree criminal damage to property.[3] Worthy was found guilty of aiding and abetting second-degree and third-degree-burglary,[4] aiding and abetting attempted theft,[5] and aiding and abetting first-degree criminal damage to property.[6]

The trial court ordered that Worthy's and McKinnis's advisory attorneys be present for each of their sentencing hearings. McKinnis again explicitly rejected assistance of counsel. Worthy did not object to the representation and his advisory attorney spoke on his behalf at sentencing.

Worthy and McKinnis appealed their convictions, claiming that the trial court (1) erred in finding that they had waived their right to counsel; (2) erred in finding that they validly waived their right to be present for trial; (3) abused its discretion in failing to grant a continuance; (4) abused its discretion in refusing to appoint substitute counsel; and (5) abused its discretion in failing to reappoint the counsel as lead counsel when Worthy and McKinnis voluntarily left the courtroom. Worthy also argued that the sentencing court abused its discretion when it sentenced him to a double durational departure under the career offender statute.

The court of appeals reversed their convictions, holding that the Sixth Amendment of the United States Constitution requires an adversarial proceeding before a criminal conviction, and there was not one in this case because no one was opposing the state. The state appeals to this court, arguing that the trial court did not err and urging us to reverse the court of appeals and reaffirm Worthy's and McKinnis's convictions. We conclude that Worthy and McKinnis were given every reasonable opportunity to have an attorney represent them at trial, but they adamantly refused assistance of counsel and with equal defiance refused to be present for their trial. Therefore, we reverse.

## I.

### Right to Counsel Waiver

■ Worthy and McKinnis argue that their waivers of their right to an attorney were invalid. The Sixth and Fourteenth Amendments to the United States Constitution guarantee criminal defendants the right to an attorney. *Gideon v. Wainwright,* 372 U.S. 335, 343–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The U.S. Supreme Court has held that:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. * * * * The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Faretta v. California,* 422 U.S. 806, 819–820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This right to an attorney may be waived if the waiver is competent and intelligent. *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Whether a waiver of a constitutional right is valid depends "upon the particular facts and circumstances surrounding that case, including the back-

---

1. *See* Minn.Stat. § 609.582, subds. 2(d), 3 (1996).

2. *See id.* §§ 609.52, subd. 2(1); 609.17, subd. 1.

3. *See id.* § 609.595, subd. 1(3).

4. *See id.* §§ 609.582, subds. 2(d), 3; 609.05.

5. *See id.* §§ 609.52, subd. 2(1); 609.17, subd. 1; 609.05.

6. *See id.* §§ 609.595, subd. 1(3); 609.05.

ground, experience, and conduct of the accused." *Id.* at 464, 58 S.Ct. 1019. This court will only overturn a trial court's finding of a valid waiver of a defendant's right to counsel if that finding is clearly erroneous. *State v. Camacho*, 561 N.W.2d 160, 168–69 (Minn. 1997).

A defendant who seeks to waive the right to counsel "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). We have cautioned that to determine whether a waiver of the right to counsel is knowing, intelligent, and voluntary, trial courts "should comprehensively examine the defendant regarding the defendant's comprehension of the charges, the possible punishments, mitigating circumstances, and any other facts relevant to the defendant's understanding of the consequences of the waiver." *Camacho*, 561 N.W.2d at 173.

In *State v. Brodie*, this court was presented with circumstances that demonstrated a valid waiver by the defendant even when a detailed on-the-record colloquy between the defendant and the trial court was absent. 532 N.W.2d 557, 557 (Minn.1995). In *Brodie*, the defendant wanted to fire his appointed attorney, so the trial court asked the defendant whether he would like to proceed with the original appointed attorney or represent himself. *State v. Brodie*, 529 N.W.2d 395, 397 (Minn.App.), *rev'd*, 532 N.W.2d 557 (Minn.1995). Opting to represent himself, the defendant responded, "I guess I've got no choice." *Id.* The court of appeals held that the trial court erred by failing to make a showing on the record that the defendant was aware of the consequences of self-representation. *Id.* at 400. We reversed the court of appeals, stating:

> This is not a case in which the record is silent on whether defendant knowingly and voluntarily waived his right to counsel. Defendant was in fact given counsel and he then "fired" counsel. The record is clear that defendant knew that he did not have a right to a different public defender but would have to represent himself if he did not accept the services of the public defender.

*Brodie*, 532 N.W.2d at 557.

Likewise, in this case, although the trial court's on-the-record inquiry regarding waiver did not include a recitation of the charges or potential punishments, it is clear that Worthy and McKinnis were in fact given counsel and then unequivocally fired their attorneys. When they did so, they were fully aware of the consequences. Worthy and McKinnis were provided with competent legal representation for over a month before trial and took full advantage of that representation up until the morning of their scheduled trial date. When a defendant has consulted with an attorney prior to waiver, a trial court could "reasonably presume that the benefits of legal assistance and the risks of proceeding without it had been described to defendant in detail by counsel." *State v. Jones*, 266 N.W.2d 706, 712 (Minn.1978).

Furthermore, Worthy and McKinnis knew that they would be expected to conduct their own defense if they chose to fire their attorneys. The trial court warned Worthy and McKinnis that if they insisted on firing their attorneys, who were prepared to proceed, it would not grant a continuance but instead they would have to represent themselves. The court further explained to Worthy and McKinnis that if they chose to proceed pro se, they would be held to the same standard as the attorneys and would be expected to call and examine witnesses. Further, Worthy and McKinnis were familiar with the criminal justice system. Worthy had five prior felony convictions and McKinnis had four prior felony convictions. McKinnis admitted that he had "seen a lot of trials of late" and that he had "been around the block a couple of times." Although knowledgeable, both Worthy and McKinnis were still steadfast in their decision to fire counsel.

■ We also note that Worthy and McKinnis dismissed their counsel because they were unhappy with counsels' rather bleak but candid assessment of their case. However, attorneys have a duty to render candid advice to clients. *See* Minn. R. Prof.

Conduct 2.1, cmt. A defendant's refusal, without good cause, to allow appointed counsel to continue representation may by itself be sufficient to find a valid waiver. *See State v. Krejci*, 458 N.W.2d 407, 413 (Minn.1990). *See also Camacho*, 561 N.W.2d at 173 (concluding that defendant's request for another attorney before choosing self-representation will not preclude a valid waiver, particularly when the defendant "is aware that he has no right to a different attorney and must proceed pro se upon rejection of the appointed attorney's assistance"). Worthy's and McKinnis's dissatisfaction with the opinion of their counsel was not good cause to fire counsel on the morning of trial. Accordingly, the trial court did not err in determining that Worthy and McKinnis waived their right to counsel.

## II.

### Trial in Absentia

■ Worthy and McKinnis also claim that they did not validly waive their right to be present at trial. The Confrontation Clause of the Sixth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, guarantees criminal defendants "a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta*, 422 U.S. at 819 n. 15, 95 S.Ct. 2525; *State v. Cassidy*, 567 N.W.2d 707, 709 (Minn.1997). In addition, the Due Process Clause protects a defendant's right to be present in some situations even when neither witnesses nor evidence is presented against a defendant. *Cassidy*, 567 N.W.2d at 709. However, this right may also be waived if done so competently and intelligently. *Johnson v. Zerbst*, 304 U.S. at 465, 58 S.Ct. 1019.

Minnesota Rules of Criminal Procedure 26.03, subd. 1(1) requires a defendant's presence "at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by [the rules of criminal procedure]." Rule 26.03, subd. 1(2) prescribes under what circumstances a defendant's continued presence is not required: "The further progress of a trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to waive the right to be present whenever ... a defendant voluntarily and without justification absents himself or herself after trial has commenced...."

■ We review a trial court's decision to conduct a trial in absentia under an abuse-of-discretion standard and will not disturb the trial court's factual findings unless they are clearly erroneous. *Cassidy*, 567 N.W.2d at 709–10. "[A] defendant bears the burden of showing that his or her absence from trial was involuntary." *Id.* at 710.

We find no merit to Worthy's and McKinnis's contention that the trial court abused its discretion in finding that they validly waived their right to be present. They were present at the commencement of the impaneling of the jury, and at the imposition of their sentences. Both Worthy and McKinnis stated unequivocally that they did not wish to stay in the courtroom during trial, including voir dire. They confirmed their refusals to remain in the courtroom again both when the jury was sworn and at the beginning of the second day of trial. The court clearly explained to them that the trial would proceed without them, that their previously fired attorneys would act only as advisory counsel, and that Worthy and McKinnis would be held to the same standard as licensed attorneys.

The trial court emphasized to both Worthy and McKinnis that they had a right to be in the courtroom and encouraged them to stay. The court also informed them that if they left the courtroom, they could return whenever they desired. The trial court endeavored to provide both Worthy and McKinnis the full opportunity to be present, to observe, and to participate in every phase of their trial. Nevertheless, they both voluntarily and without justification left the courtroom.

The record is clear on Worthy's and McKinnis's reasons for not being present in court. Both were attempting to delay their trial for tactical and strategical reasons: they wanted to be the last of multiple defendants to be tried. Defendants cannot take advantage of their own willful choice to defeat the

ends of justice and must be held to have waived their right to be present at trial under these facts. We conclude that Worthy and McKinnis did not meet their burden of showing their absence from trial was involuntary. The trial court did not abuse its discretion in proceeding with the trial when the defendants were not present.

## III.

### Trial Continuance

 Worthy and McKinnis next contend that the trial court erred by refusing to grant a continuance so that they could obtain a private attorney. Whether to grant a continuance is within the trial court's discretion, based on all facts and circumstances surrounding the request. *State v. Fagerstrom*, 286 Minn. 295, 299, 176 N.W.2d 261, 264 (1970). A defendant may not demand a continuance to delay the proceedings or by arbitrarily attempting to substitute another attorney at the time of trial. *Id.*

In *State v. Vance*, this court upheld a denial of a defendant's request for a continuance to obtain a new attorney. 254 N.W.2d 353, 359 (Minn.1977). The defendant was provided a competent court-appointed attorney who had investigated the case and was prepared for trial. *Id.* The defendant had 11 weeks to obtain a private attorney but did not ask for a continuance until a few days before trial, and was not certain he could secure an alternative attorney. *Id.* In addition, he did not have good cause to dismiss his court-appointed attorney. *Id.* The defendant was concerned only that the court-appointed attorney would not be able to devote sufficient time and effort to his case, and about a minor disagreement about whether to call a particular witness. *Id.* We concluded that the trial court did not err in denying a continuance. *Id.*

Similarly, here the trial court appointed attorneys for Worthy and McKinnis on April 1, 1996, but they did not request a continuance to hire private attorneys until the first date of trial, May 15, 1996. The trial court stated that both court-appointed attorneys were experienced, competent, and prepared to try the case. Neither Worthy nor McKinnis had good cause for firing his attorney. Neither Worthy nor McKinnis could provide the court with the name of another attorney who would be willing to represent them, but only claimed that family members were "taking care of that." The trial court concluded that Worthy and McKinnis were simply trying to delay trial. Under these facts, the trial court did not abuse its discretion when it denied a continuance.

## IV.

### Substitute Attorney

 Worthy and McKinnis also contend that the trial court abused its discretion when it refused to appoint substitute attorneys for them on the morning of trial. The right to counsel includes a fair opportunity to secure an attorney of choice, but an indigent defendant does not have the unbridled right to be represented by the attorney of his choice. *State v. Gassler*, 505 N.W.2d 62, 70 (Minn.1993) (stating that defendant must accept the court-appointed attorney); *Vance*, 254 N.W.2d at 358. A court will grant an indigent's request for different counsel "only if exceptional circumstances exist and the demand is timely and reasonably made." *Vance*, 254 N.W.2d at 358. Neither requirement was met in this case.

Though Worthy and McKinnis first informed the trial court of their dissatisfaction with their court-appointed attorneys on the morning of trial, they assert that their request was timely under the circumstances of this case. They point out that Worthy's trial was originally set for June 4, 1996, but the trial court ordered that the consolidated trial would take place on May 15, 1996. The defendants' first court appearance after the scheduling of the consolidated trial was the trial itself, at which time the defendants told the court they wanted a new attorney. However, what Worthy and McKinnis neglect to point out is that both defendants requested that the trial be consolidated against the advice of McKinnis's attorney. In fact, McKinnis's attorney told the court that McKinnis desired a consolidated trial to avoid the risk of being the first to be tried. In addition, Worthy and McKinnis both made

speedy trial demands, though McKinnis eventually requested to withdraw his demand. Under these facts the request for a substitute attorney was not timely.

▬ Worthy and McKinnis also fall short of demonstrating the requisite exceptional circumstances. They told the trial court they wanted new counsel because they felt they were not being properly represented. According to McKinnis, his attorney told him that he was not going to win the case. McKinnis's attorney explained that he and Worthy's attorney told McKinnis and Worthy that the evidence against them was quite strong and that their chances for success at trial were not good, but also told them that they were "ready, able, and willing to try their cases." General dissatisfaction or disagreement with appointed counsel's assessment of the case does not constitute the exceptional circumstances needed to obtain a substitute attorney. The trial court did not abuse its discretion in refusing to appoint substitute attorneys for Worthy and McKinnis.

## V.

### Reappointment of Dismissed Attorney

▬ In a final attempt to argue error based on their trial in absentia and their pro se status, Worthy and McKinnis contend that the trial court abused its discretion when it failed to reappoint their dismissed attorneys after they voluntarily absented themselves from trial. The court of appeals agreed, holding that Worthy's and McKinnis's convictions must be reversed because "the Sixth Amendment requires that a defendant be convicted after some type of adversarial proceeding" and a "proceeding with no one opposing the prosecutor cannot be considered adversarial." Although we disagree with the court of appeals, we recognize the paramount interest of a defendant's right to competent legal representation in a criminal trial. *See United States v. Cronic*, 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ("An accused's right to be represented by counsel is a fundamental component of our criminal justice system").

▬ Criminal defendants have a constitutional right to an attorney and a corollary constitutional right to choose to represent themselves in their own trial. *Faretta*, 422 U.S. at 819–21, 95 S.Ct. 2525; *State v. Richards*, 456 N.W.2d 260, 263 (Minn.1990). If either of these rights is violated, the defendant need not show prejudice to obtain a reversal. *Camacho*, 561 N.W.2d at 171. Accordingly, the trial court in this case found itself in a dilemma of either forcing unacceptable attorneys on Worthy and McKinnis, thereby risking denial of their right to proceed pro se, or allowing the trial to proceed in their absence. In essence, Worthy and McKinnis argue that the trial court erred in accepting both their waiver of counsel and their waiver of the right to be present. We disagree. While criminal defendants have a right to counsel and a right to be present at their trial that cannot be denied, either or both of these rights may be waived.

Worthy and McKinnis were unquestionably afforded their rights to counsel and to be present, and then voluntarily, knowingly, and intelligently waived those rights. They attempted to use the firing of their attorneys without just cause to coerce the trial court to grant a continuance. The trial court in this case appointed competent attorneys who actively represented Worthy and McKinnis in the weeks preceding trial. Worthy and McKinnis demanded speedy trials and, despite his attorney's advice to the contrary, McKinnis successfully moved to consolidate the trials. Then, on the morning of trial, Worthy and McKinnis, without cause, fired their attorneys, who were "ready, able, and willing" to proceed.

The trial court concluded that Worthy and McKinnis were trying to delay trial and properly denied their untimely request for a continuance. The trial court then explained to Worthy and McKinnis that they could continue pro se, but they would be held to the same standard as licensed attorneys. Then, after categorically firing their attorneys, Worthy and McKinnis rejected the advice of the trial court and refused to remain present for their trial. While Worthy's and McKinnis's decisions were neither wise nor beneficial, the trial court did not have a duty

to reject their valid waivers of their right to counsel or their right to be present. *See, e.g., Johnson v. State,* 67 Md.App. 347, 507 A.2d 1134, 1148 (1986) (holding trial court did not abuse its discretion when it accepted defendant's valid waiver of his right to counsel and his right to be present at trial). *See also Faretta,* 422 U.S. at 834–35 n. 46, 95 S.Ct. 2525 (stating that when a defendant chooses to proceed pro se, he cannot then complain about the quality of that representation). The trial court did not abuse its discretion in not reappointing the dismissed attorneys as lead counsel when Worthy and McKinnis voluntarily left the courtroom.[7]

## VI.

### Career Offender Statute

Worthy claims that the trial court erred when it sentenced him to a double durational departure pursuant to the career offender statute (COS). *See* Minn.Stat. § 609.152 (1996). The relevant portion of the COS provides:

> Whenever a person is convicted of a felony, and the judge is imposing an executed sentence based on a sentencing guidelines presumptive imprisonment sentence, the judge may impose an aggravated durational departure from the presumptive sentence up to the statutory maximum sentence if the judge finds and specifies on the record that the offender has more than four prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct.

*Id.* subd. 3. In this case, the court noted on the record that Worthy's prior felony convictions include: (1) possession of a dangerous weapon in 1972; (2) possession of a controlled substance in 1988; (3) receiving stolen property in 1990; (4) receiving stolen property in 1995; and (5) attempted third degree burglary in 1995. Because Worthy's current felony conviction for aiding and abetting second-degree burglary was part of a pattern of criminal conduct, the court sentenced Worthy to a 64–month prison term, which is a double durational departure from the presumptive term.

Worthy argues that the trial court abused its discretion by imposing a double durational departure because his 1972 conviction for possession of a dangerous weapon is too old to be used for purposes of the COS. Worthy's argument fails under the plain language of the COS which only requires "that the offender [have] more than four *prior* felony convictions." Minn.Stat. § 609.152, subd. 3 (emphasis added). The COS does not impose a time limit for includable prior convictions. Indeed, the very term "career" necessarily implies that the convictions may span over one's lifetime. Therefore, the sentencing court did not err.

In conclusion, we hold that the trial court did not err in refusing to grant a continuance; in refusing to provide a substitute attorney; in determining that Worthy and McKinnis validly waived both their right to counsel and their right to be present; or in failing to reappoint the dismissed attorneys. It is Worthy and McKinnis alone who are responsible for the nature of their trial. While the state must reasonably permit criminal defendants to secure legal representation and to remain present in the courtroom, it need not force competent defendants to do so against their will.

Reversed.

---

7. We note however, that while the trial court here did not abuse its discretion in not reappointing the attorneys, trial courts may have the authority in some cases to require manipulative defendants to accept legal representation. Under certain circumstances, a trial court may refuse a defendant's request to proceed pro se, where a defendant has waived or forfeited the right to self-representation. For example, in *State v. Richards* we determined that "[s]hould [the] defendant engage in disruptive or uncooperative conduct, including but not limited to … refusing to appear in court, the trial court may conclude in its discretion that defendant has waived his limited right to represent himself and may permit counsel to proceed with his defense." 463 N.W.2d 499, 499 (Minn.1990). *See also Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. 2525. ("[A] trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct.")