*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0426**

State of Minnesota,
Respondent,

vs.

Melissa Rae Guillette,
Appellant.

**Filed December 27, 2016
Affirmed
Kirk, Judge**

Rice County District Court
File No. 66-CR-15-2435

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John L. Fossum, Rice County Attorney, Terence Swihart, Assistant County Attorney, Faribault, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael McLaughlin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

After entering a guilty plea contingent on a non-prosecution agreement that did not materialize, appellant declined an opportunity to withdraw her plea and proceeded to

sentencing. Appellant challenges the district court's refusal to enforce specific performance of the original plea agreement and the district court's failure to appoint substitute counsel. We affirm.

**FACTS**

On September 25, 2015, appellant Melissa Rae Guillette was charged in Rice County with third-degree murder (controlled substance) and introducing contraband into a state prison. Appellant was appointed a public defender and pleaded guilty to third-degree murder on October 14 under the following terms: (1) the introducing-contraband charge would be dismissed; (2) the state would recommend a bottom-of-the-box sentence, which was anticipated to be 128 months; and (3) the state would not prosecute related offenses committed in Douglas County. Defense counsel reiterated that the state would recommend the bottom of the box, or 128 months, "based on our understanding that this is a severity level 10 offense with no prior criminal history score." The state also noted that the bottom-of-the-box sentence may be longer than 128 months if appellant's criminal-history score was incorrect. The parties agreed that discovery of criminal-history points would increase the state's recommended sentence, and that such an increase would not be grounds for appellant to withdraw her guilty plea.

The district court stated that it did not believe it could bind the Douglas County Attorney's Office to a non-prosecution agreement. The state agreed, but explained that the Douglas County Attorney agreed not to charge appellant for related offenses if she pleaded guilty in this case because the contemplated disposition in this case would likely run concurrent with any related Douglas County sentence. The parties agreed, and the district

2

court made clear, that appellant's guilty plea would be conditioned upon receiving written confirmation of the non-prosecution agreement from Douglas County. The district court noted that appellant would be allowed to withdraw her guilty plea if a written assurance was not provided.

Appellant did not have any questions regarding the terms of the plea agreement and confirmed that she wished to enter a guilty plea. Appellant waived her trial rights, pleaded guilty, and provided a factual basis. The district court found the factual basis to be sufficient, deferred acceptance of the plea until sentencing, and ordered a presentence investigation (PSI) and sentencing worksheet.

On November 2, the Douglas County Attorney's written confirmation of the non-prosecution agreement was filed. A PSI and sentencing worksheet were completed assuming that third-degree murder was a severity level 10 offense, which meant that, as per the Minnesota Sentencing Guidelines, the offense carried a presumptive bottom-of-the-box sentence of 128 months.

On November 4, appellant wrote a letter to the district court requesting substitute counsel and claiming that there were "major errors" in her case. Appellant requested a second autopsy of the victim and claimed that Douglas County failed to timely confirm the non-prosecution agreement. Appellant also complained that she had not received any correspondence from her attorney. The district court directed the public defender to respond to appellant's request for new counsel, which the district court interpreted as a request to withdraw her guilty plea based upon mistake of fact.

3

On November 10, appellant wrote a second letter to the district court requesting an opportunity to be heard on bail so she could "get proper representation." The district court set a hearing on appellant's request for bail and substitution of counsel. At the November 18 hearing, the public defender stated that appellant had spoken to a private attorney and that there was likely time before appellant's upcoming sentencing hearing for her new attorney to file a motion to withdraw her guilty plea. Appellant claimed that a private attorney had taken her case and was supposed to be present.

The district court and the attorneys agreed that time was needed for appellant's new attorney to either file a substitution of counsel or a certificate of representation. The district court ordered that if private counsel did not appear to replace the public defender, the public defender would be expected to argue appellant's motion to withdraw her guilty plea. The district court wanted the motion in writing and served on the state. Appellant argued that she should be allowed to withdraw her plea because Douglas County did not file written confirmation by October 21, as required by her plea agreement. The district court reminded appellant that the plea agreement did not impose a deadline on Douglas County. The district court set appellant's motion to be heard at her sentencing hearing.

On November 23, appellant wrote a third letter to the district court requesting an earlier sentencing date and apologizing for dismissing her public defender and pulling out of the plea agreement. Appellant explained that she was nervous about the length of her anticipated prison sentence. In response, the district court stated that the public defender could schedule an earlier sentencing date if appellant did not wish to rescind her guilty plea.

4

On December 8, an amended sentencing worksheet was filed indicating that the appropriate severity level for third-degree murder in this case was 9, which decreased the presumptive guideline sentence to 86 months with an adjusted bottom-of-the-box sentence of 74 months. On December 17, the day before sentencing, Douglas County rescinded the non-prosecution agreement. The Douglas County Attorney explained that the non-prosecution agreement was entered upon the understanding that appellant would plead guilty to a severity level 10 offense and receive a 128-month, bottom-of-the-box, sentence. He further explained that he entered into the agreement because prosecution of appellant for the related Douglas County crimes would not have resulted in additional prison time because her sentence would have been absorbed by the Rice County sentence. Because this information was inaccurate, and appellant pleaded guilty to a severity level 9 offense, the bottom-of-the-box sentence was a substantially different disposition, which he believed rendered the agreement unreasonable. The Douglas County Attorney acknowledged that although it would allow appellant to withdraw her guilty plea, he intended to file charges against her.

At the December 18 sentencing hearing, the state explained that the parties all believed that appellant had pleaded guilty to a severity level 10 offense, but that upon review, the Sentencing Guidelines Commission discovered that it was actually a severity level 9 offense, which significantly reduced the presumptive sentence. The state concluded that appellant had grounds to withdraw her plea because Douglas County rescinded the non-prosecution agreement, but that if she elected not to do so, sentencing would occur with the understanding that she would likely be charged in Douglas County.

5

Appellant's public defender argued that because the written confirmation filed by Douglas County did not specify a motivation for entering into the non-prosecution agreement, it was not proper for Douglas County to withdraw. Appellant's public defender asserted that, just as appellant remained bound by the plea agreement, so did Douglas County. The district court noted that appellant was not bound because she had the right to withdraw her guilty plea if Douglas County intended to prosecute her. The district court further noted that it had no authority to bind the Douglas County Attorney because he was not a party to this case. The district court then asked appellant if she wished to withdraw her plea.

After confirming that she had enough time to discuss the situation with her public defender, appellant stated that she was not backing out of the plea agreement, but that the state had backed out of the agreement. The state noted that the parties were all under the impression that appellant pleaded guilty to a severity level 10 offense in exchange for the plea agreement. The state explained that it could not force Douglas County to comply now that the parties knew the correct severity level of the offense, and that if appellant wanted a global settlement including Douglas County, she would have to withdraw her plea and renegotiate. Appellant did not express any discontent with her public defender.

Appellant declined to withdraw her guilty plea. The district court confirmed that appellant understood her right to withdraw her plea because the non-prosecution agreement was a contingency that was not met. Appellant verified that she had enough time to discuss the issue with her attorney. The district court accepted appellant's plea, entered a judgment of conviction, and dismissed the introducing-contraband charge. The district court

6

imposed the presumptive guideline sentence of 86 months rather than the 74-month bottom-of-the-box disposition recommended by the state.

This appeal follows.

**D E C I S I O N**

**I.** **The district court did not err when it declined to order specific performance of the plea agreement but gave appellant the right to withdraw her guilty plea.**

Determining what the parties agreed to in a plea bargain is a factual inquiry, but the interpretation and enforcement of plea agreements present issues of law subject to de novo review. *State v. Rhodes*, 675 N.W.2d 323, 326 (Minn. 2004); *State v. Jumping Eagle*, 620 N.W.2d 42, 43 (Minn. 2000). "In determining whether a plea agreement was violated, courts look to what the parties to the plea bargain reasonably understood to be the terms of the agreement." *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000) (quotation omitted). Here, there is no factual dispute as to the terms of the original plea agreement.

"[T]he state may withdraw from a plea agreement at any time before a defendant enters a guilty plea and the trial court accepts the plea, unless the defendant has detrimentally relied upon the agreement." *State v. Johnson*, 617 N.W.2d 440, 443 (Minn. App. 2000). "A defendant does not have an absolute right to withdraw a valid guilty plea." *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). But a district court must permit withdrawal of a guilty plea when it is necessary to correct "manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. Manifest injustice exists when a guilty plea is not accurate, voluntary, and intelligent. *Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997).

"The voluntariness requirement insures that a guilty plea is not entered because of any improper pressures or inducements." *Brown*, 606 N.W.2d at 674 (quotation omitted). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971). "Allowing the government to breach a promise that induced a guilty plea violates due process." *Brown*, 606 N.W.2d at 674 (quotation omitted). "On demonstration that a plea agreement has been breached, the court may allow withdrawal of the plea, order specific performance, or alter the sentence if appropriate." *Id.*

"In Minnesota[,] plea agreements have been analogized to contracts and principles of contract law are applied to determine their terms." *In re Ashman*, 608 N.W.2d 853, 858 (Minn. 2000). A mutual mistake of fact may allow the parties to avoid a contract, "if the party seeking to avoid the contract did not assume the risk of the mistake." *Winter v. Skoglund*, 404 N.W.2d 786, 793 (Minn. 1987). When the parties assent to a contract based on an assumption, under the belief that there is no risk of error in that assumption, the parties have not assumed any risk and the contract is voidable. *Id.* The court must determine whether there was a mistake of fact at the time the contract was made. *See City of Savage v. Formanek*, 459 N.W.2d 173, 175 (Minn. App. 1990), *review denied* (Minn. Oct. 25, 1990). A mistake in the anticipated length of a sentence is a mistake of fact which would allow a guilty plea to be withdrawn. *State v. Benson*, 330 N.W.2d 879, 880 (Minn. 1983); *see also Jumping Eagle*, 620 N.W.2d at 44-45.

8

Appellant argues that the state breached the plea agreement when Douglas County rescinded the non-prosecution agreement, and that she is entitled to specific performance of the agreement. Appellant asks this court to remand to the district court for specific performance of the non-prosecution agreement.

The state argues that both the plea agreement and the plea itself became invalid when the mutual mistake of fact was discovered, because it significantly decreased the anticipated bottom-of-the-box sentence from 128 months to 74 months. Additionally, because the bargained-for sentence was not authorized for the offense appellant pleaded guilty to, the agreement is unenforceable, and the appropriate remedy was the opportunity for appellant to withdraw her guilty plea. We agree with the state.

The district court did not err when it denied appellant's request for specific performance of the non-prosecution agreement. Both parties' mutual mistake regarding the severity level of the offense that appellant pleaded guilty to, and the length of the related sentence, was a mistake of fact at the time the plea was entered. *See Jumping Eagle*, 620 N.W.2d at 44-45; *Formanek*, 459 N.W.2d at 175. This mistake allowed the state to avoid enforcement of the plea agreement. All parties to the agreement reasonably understood that, in exchange for the terms of the agreement, appellant would plead guilty to a severity level 10 offense, not a severity level 9 offense.

Despite this mutual mistake of fact, appellant asks that the non-prosecution agreement be enforced against Douglas County because she detrimentally relied on the plea agreement. *See Johnson*, 617 N.W.2d at 443. Appellant has failed to establish detrimental reliance. Appellant was aware of the conditional nature of her plea, and the

9

parties' mutual mistake of fact resulted in a significantly less severe disposition. In fact, the initial agreement as to her minimum sentence could not be enforced against her absent grounds for an upward departure, which were not present and are not argued here. *See* Minn. Stat. § 609.095(a) (2014).

Because neither party assumed the risk that the presumptive bottom-of-the-box sentence would be shorter than 128 months, and because the district court had not yet accepted appellant's guilty plea when the mutual mistake of fact was discovered, the state had the ability to withdraw from the plea agreement. *Winter*, 404 N.W.2d at 793. Furthermore, withdrawal of appellant's guilty plea was always the contemplated remedy if Douglas County did not agree to refrain from filing charges. Therefore, the district court did not err when it gave appellant the right to withdraw her plea rather than ordering specific performance of the non-prosecution agreement.[1]

## II. The district court implicitly denied appellant's request for substitute counsel and afforded her the right to withdraw her guilty plea.

"The decision to grant or deny a request for substitute counsel lies within the [district] court's discretion." *State v. Clark*, 722 N.W.2d 460, 464 (Minn. 2006) (citing *State v. Worthy*, 583 N.W.2d 270, 278 (Minn. 1998)). We review the district court's decision for an abuse of discretion. *State v. Munt*, 831 N.W.2d 569, 586 (Minn. 2013).

---

[1] The state argues that the district court lacked the authority to bind Douglas County. Because Rice County had the right to withdraw from the plea agreement based on a mutual mistake of fact, this court need not address whether the district court had the authority to bind Douglas County. This court also need not address whether the Douglas County Attorney's Office is properly before this court, or whether there are grounds to conclude that Douglas County breached the non-prosecution agreement by filing charges against appellant.

A criminal defendant has a constitutional right to counsel.  U.S. Const. amend. VI; Minn. Const. art. I, § 6.  A defendant's constitutional "right to counsel includes a fair opportunity to secure an attorney of choice, but an indigent defendant does not have the unbridled right to be represented by the attorney of his choice."  *Worthy*, 583 N.W.2d at 278.  "A court will grant an indigent's request for different counsel only if exceptional circumstances exist and the demand is timely and reasonably made."  *Id.* (quotation omitted).  "[E]xceptional circumstances are those that affect a court-appointed attorney's ability or competence to represent the client."  *State v. Gillam*, 629 N.W.2d 440, 449 (Minn. 2001).  "General dissatisfaction or disagreement with appointed counsel's assessment of the case does not constitute the exceptional circumstances needed to obtain a substitute attorney."  *Worthy*, 583 N.W.2d at 279.  If "the defendant voices serious allegations of inadequate representation, the district court should conduct a searching inquiry before determining whether the defendant's complaints warrant appointment of substitute counsel."  *Munt*, 831 N.W.2d at 586 (quotations omitted).

"[W]hen a criminal defendant makes a request to discharge counsel, the district court is required to first ascertain how the defendant wishes to proceed after counsel is discharged, and then determine whether it is appropriate for the defendant to proceed as requested."  *State v. Paige*, 765 N.W.2d 134, 139 (Minn. App. 2009).  As was the case here, "a criminal defendant who requests to discharge counsel may wish to proceed with substitute counsel."  *Id.*

Appellant argues that the procedure for discharge of private counsel by a criminal defendant set forth in *Paige* should have been followed in her case.  Relying on *Paige*,

11

appellant argues that her public defender should have been immediately discharged, then she should have been given the choice between hiring substitute counsel or representing herself, and finally, the district court needed to determine whether it was appropriate for her to proceed in her chosen manner. *Id.* But appellant was not represented by private counsel, and she made it clear that she wished to hire substitute counsel when she appeared before the district court. Here, there was no need for the district court to conduct an inquiry into how appellant wished to proceed, and the court implicitly determined that there was nothing inappropriate about appellant's choice to hire private counsel.

Appellant also asserts that, by not immediately discharging her public defender, the district court deprived her of her constitutional right to choice of counsel and of her right to effective assistance of counsel. Appellant claims that her public defender could not provide her with effective assistance because appellant alleged that he was deficient, which created an insurmountable conflict. Appellant cites to no legal authority in support of these arguments.

The facts of this case indicate that appellant appeared before the district court and claimed that she had hired private counsel. The district court continued the hearing and ordered that appellant's new attorney, or her public defender if private counsel was not retained, file a motion to withdraw her guilty plea. Appellant now argues that the district court's delay to afford her new attorney an opportunity to file a motion on her behalf deprived her of "her rightful case authority by ignoring her request to withdraw her guilty plea." Private counsel never materialized, and it appears as though the district court interpreted appellant's third letter, along with her failure to raise the issue of private counsel

when she appeared for sentencing with her public defender, as a withdrawal of her request for substitute counsel.

Despite the fact that she was given the absolute right to withdraw her guilty plea, appellant argues that her request to withdraw her plea was ignored by the district court. She asks this court to remand to the district court to fully address her request for substitute counsel and for specific performance of the non-prosecution agreement, or for another opportunity to withdraw her guilty plea.

Although there is no explicit statement in the record, after reviewing the record, this court concludes that the district court proceeded at sentencing with the understanding that appellant had withdrawn her request for substitute counsel because private counsel never materialized. Here, the district court's decision to proceed without appointing substitute counsel can also be interpreted as an implicit denial of appellant's request. The district court did not conduct a review on the record of whether substitution of counsel was warranted, but there is no evidence in the record that appellant was prejudiced by the district court's failure to discharge her public defender. *See State v. Fields*, 311 N.W.2d 486, 487 (Minn. 1981) (holding that appellant was not prejudiced by the district court's denial of his request for substitute counsel). And if the district court would have discharged appellant's public defender, she would have been forced to proceed unrepresented because there is no evidence in the record of a material breakdown to justify court appointed substitute counsel. *See Gillam*, 629 N.W.2d at 449.

This court affirms the district court's implicit denial of substitute counsel because appellant did not make an adequate allegation of deficient representation and because she

was not prejudiced by the denial.  Furthermore, this court concludes that the district court was not required to make specific findings on this issue because appellant withdrew her request for substitute counsel.

**Affirmed.**