*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1132**

State of Minnesota,
Respondent,

vs.

Margaret Ann Frank,
Appellant.

**Filed March 18, 2024**
**Affirmed**
**Gaïtas, Judge**

Waseca County District Court
File Nos. 81-CR-21-502, 81-CR-19-322, 81-CR-20-414

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Rachel V. Cornelius, Waseca County Attorney, Waseca, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Greg Scanlan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Gaïtas, Judge; and Kirk, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

Appellant Margaret Ann Frank challenges the district court's execution of her sentences—at her request—during a first appearance on an alleged probation violation. Frank argues that her waiver of counsel during that hearing was constitutionally invalid and that the district court abused its discretion in revoking her probation without making legally required findings. We conclude that Frank validly waived counsel and that the district court was not required to make findings before executing Frank's sentences at her request, and we affirm.

**FACTS**

In April 2019, Frank damaged her ex-boyfriend's car with a key, entered his home, and assaulted his wife. Following these incidents, Frank pleaded guilty to first-degree burglary and first-degree damage to property. For the burglary conviction, the district court stayed execution of a 33-month prison sentence for seven years. The district court stayed imposition of sentence for three years for the damage-to-property conviction.

By March 2021, Frank had violated the conditions of her probation two times, and she was facing a third alleged probation violation. However, in April 2021, in connection with an unrelated criminal case, Frank was found incompetent to stand trial under Minnesota Rule of Criminal Procedure 20.01. *See* Minn. R. Crim. P. 20.01, subd. 2 ("A defendant is incompetent and must not plead, be tried, or be sentenced if the defendant due to mental illness or cognitive impairment lacks ability to: (a) rationally consult with

2

counsel; or (b) understand the proceedings or participate in the defense."). Frank's third probation-revocation hearing was postponed due to her incompetence.

Between April and June 2021, Frank allegedly violated a harassment restraining order (HRO) that her ex-boyfriend's wife obtained following the burglary. Frank was charged with six counts of violating the HRO. In July 2021, Frank pleaded guilty to one of these counts.[1]

In December 2022, Frank was found to be competent. She then appeared before the district court to address the unresolved probation violation and to be sentenced for violating the HRO. Frank admitted that she had violated her probation by failing to maintain contact with her probation officer and failing to provide a release for her medical records. The district court continued Frank's probation and imposed a 24-month stay of execution for the HRO violation.

In April 2023, Frank's probation officer filed a report, which is included in the district court record, alleging a new probation violation. According to the probation officer's report, Frank, who had been living in Wisconsin, decided to move back to Minnesota. Her probation agreement required her to meet with her probation officer within 24 hours of returning to Minnesota. Although the probation officer gave Frank additional time to report for a meeting, Frank failed to appear for their scheduled meeting. The report details text messages exchanged between Frank and the probation officer about the

---

[1] The record shows that Frank pleaded guilty to violating the HRO after she was found incompetent and before she was deemed competent. We note that the validity of Frank's guilty plea is not before us.

required meeting. During one exchange, Frank stated that she could not meet "because of no gas money," and she requested a remote meeting. The probation officer responded that the meeting had to be in person to confirm that Frank was in Minnesota but gave Frank a few more days to meet. Later in the day, Frank texted the probation officer, "Also, I'm wondering if I can just execute and sit in jail." She explained, "I don't want to be on probation anymore," and she offered to turn herself in "anytime this week." Several days later, at the scheduled meeting time, Frank texted the probation officer again to discuss executing her sentences. She stated that she did not "have gas to get to the office" and that she was too "mentally ill to come in anyways." According to the probation officer's report, the probation officer then "called and spoke with [Frank]" to discuss "what executing her sentence would look like."

At her first appearance on the 2023 probation violation, Frank appeared before the district court without counsel. The district court informed Frank that she "ha[d] the right to be represented by an attorney." It explained that, if she could not afford an attorney, she could apply for a public defender or waive her right to an attorney and represent herself. The district court asked, "Do you wish to be represented by an attorney?" Frank responded, "I don't." The district court inquired whether Frank was "waiving [her] right to an attorney" and "wish[ed] to represent [her]self," and Frank stated, "yes." Then, advising Frank of her rights in a probation violation proceeding, the district court stated:

> In this matter you also have the right to contest the allegations contained in the violation reports. If you enter a denial today we will set the matter on for a contested hearing. At the contested hearing the state has the burden of proving by clear and convincing evidence that you knew of conditions of

4

probation and intentionally or willfully violated them. You would have the right to cross examine the state's witnesses, the right to subpoena witnesses to testify in support of your defense, and the right to remain silent and nobody could force you to testify.

The district court asked Frank whether she understood her rights. Frank stated, "Yes," and told the district court that she wanted to admit that she had violated her probation. Then, the district court inquired whether Frank understood that by admitting the violation, "you're waiving or giving up your rights to have a contested hearing in this matter," and Frank responded, "Yes." Frank acknowledged that she had violated her probation in the three separate matters before the court by failing to meet with her probation officer. Following this exchange, the district court found that Frank "ha[d] knowingly and voluntarily waived her rights to a contested hearing[] [and that] [a] sufficient factual basis ha[d] been entered for the Court to accept her admissions to the violations as contained in the reports."

As a disposition for the probation violation, the prosecutor recommended that the district court revoke Frank's probation and execute her prison sentences. Then, the district court asked Frank, "[W]hat do you think is an appropriate sanction or sentence?" Frank stated, "I agree with getting executed. I think that's good." The district court told Frank that she had a right to request execution of her sentences and asked whether Frank "just want[ed] to execute [her] sentence . . . and serve [her] time and be off probation." Frank responded, "Yes." Noting that Frank was entitled to request execution of her sentences, the district court executed the prison sentences in Frank's three cases.

Frank appeals.

5

**DECISION**

**I.** **Frank's decision to waive counsel at her first appearance for a probation violation was knowing, intelligent, and voluntary, and the waiver was therefore constitutionally valid.**

Frank first argues that her waiver of her constitutional right to counsel at the probation-violation hearing was constitutionally invalid. Both the United States and Minnesota Constitutions afford criminal defendants a right to the assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. This right extends to probation-revocation proceedings. *See Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973); *State v. Kouba*, 709 N.W.2d 299, 304 (Minn. App. 2006) (quoting *State v. Ferris*, 540 N.W.2d 891, 893 (Minn. App. 1995)); *see also* Minn. Stat. § 609.14, subd. 2 (2020) (a "defendant is entitled to be heard and to be represented by counsel" at a probation-revocation hearing); Minn. R. Crim. P. 27.04, subd. 2(1)(c) (providing that at a first appearance on a probation violation the probationer must be advised of the right to "a lawyer, including an appointed lawyer if the probationer cannot afford a lawyer").

A criminal defendant also has a constitutional right to self-representation. *State v. Camacho*, 561 N.W.2d 160, 170-71 (Minn. 1997). To exercise this right, a defendant must first waive the right to counsel. *See State v. Jones*, 772 N.W.2d 496, 504 (Minn. 2009) ("Waiver is the voluntary relinquishment of a known right."). To comport with constitutional requirements, a criminal defendant's waiver of counsel must be knowing, intelligent, and voluntary. *State v. Rhoads*, 813 N.W.2d 880, 884-85 (Minn. 2012). Whether a defendant's decision to waive counsel was valid depends on "the particular facts and circumstances surrounding the case, including the background, experience, and

6

conduct of the accused." *State v. Worthy*, 583 N.W.2d 270, 275-76 (Minn. 1998) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

An appellate court reviews de novo whether a defendant's waiver of counsel was knowing, intelligent, and voluntary. *Rhoads*, 813 N.W.2d at 885. Any factual findings bearing on the validity of the waiver are reviewed for clear error. *Jones*, 772 N.W.2d at 504 (quoting *Worthy*, 583 N.W.2d at 276).

Frank makes two arguments as to why her waiver of counsel was constitutionally defective.

First, she argues that, because the district court failed to adequately inquire about her mental-health status, the district court's acceptance of her waiver of counsel was "cursory." In support of this argument, Frank correctly observes that, if the "mental competency of the defendant comes into question," the law requires a district court to ensure that the defendant is competent to "make a knowing and intelligent waiver of his right to the assistance of counsel." *State v. Bauer*, 245 N.W.2d 848, 859 (Minn. 1976); *see also Burt v. State*, 256 N.W.2d 633, 635-36 (Minn. 1977) (reversing an order denying postconviction relief because a presentence investigation report—that the district court had access to—raised serious doubts about the defendant's capacity to intelligently waive counsel).

However, the transcript of Frank's first appearance for the probation violation in April 2023 does not reveal any circumstances that would have given the district court a reason to question Frank's competence. Following a competency evaluation in December 2022, Frank was deemed competent. Although Frank told her probation officer that she

7

could not meet in person because she had no gas money and due to her mental health, the probation officer—who communicated with Frank by phone, in addition to text messages—did not express concerns about Frank's competence. *Cf. Camacho*, 561 N.W.2d at 163 (reasoning that mental illness alone does not prevent a defendant from waiving certain constitutional rights). Furthermore, the district court questioned Frank about her mental health during the hearing when Frank agreed to admit the probation violation:

> Q: Are you entering your admission today freely and voluntarily?
> A: Yes.
>
> Q: Are you under the influence of any controlled substance or have any mental impairments that would affect your ability to understand what you're doing today?
> A: I'm not.
>
> Q: So you're thinking clearly and understand this process?
> A: Yes.

Given these circumstances, Frank's competence did not come into question during the first appearance. Thus, the district court had no reason to further inquire about Frank's mental health before accepting her waiver of counsel.

Second, Frank contends that the district court failed to fully advise her of her legal rights before accepting her waiver of counsel. Frank emphasizes that the district court did not tell Frank that she could be disadvantaged by representing herself.

We disagree that the district court's advisory regarding Frank's rights was inadequate. The Minnesota Rules of Criminal Procedure require district courts to provide probationers with a rights advisory at the first appearance for an alleged probation

violation. Minn. R. Crim. P. 27.04, subd. 2(1)(c). The applicable rule provides that, when a "probationer initially appears on the warrant or summons" the district court must inform the probationer of the rights to:

a. a lawyer, including an appointed lawyer if the probationer cannot afford a lawyer;
b. a revocation hearing to determine whether clear and convincing evidence of a probation violation exists and whether probation should be revoked;
c. disclosure of all evidence used to support revocation and of official records relevant to revocation;
d. present evidence, subpoena witnesses, and call and cross-examine witnesses, except the court may prohibit the probationer from confrontation if the court believes a substantial likelihood of serious harm to others exists;
e. present mitigating evidence or other reasons why the violation, if proved, should not result in revocation; [and]
f. appeal any decision to revoke probation.

*Id.*; *see also Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972) (stating that these rights are the minimum due process rights a defendant is entitled to during a contested probation hearing (i.e., a *Morrissey* hearing)). Here, the district court addressed all the information required by the criminal-procedure rule. At the outset of the hearing, the district court informed Frank of her right to be represented by counsel, including appointed counsel if she could not afford to hire an attorney. The district court also advised Frank that: (1) she had a right to contest the allegation that she violated her probation; (2) if she denied the allegation, the matter would be set for a contested hearing; (3) at the contested hearing, the state would be required to prove by clear and convincing evidence that she intentionally or willfully violated a condition of her probation; and (4) she had the right to "cross examine the state's witnesses, the right to subpoena witnesses to testify in support of [her] defense,

9

and the right to remain silent and nobody could force [her] to testify." Because the district court included all of the information required under the criminal-procedure rule, the advisory was sufficient.

Frank contends that the district court had an additional obligation to discourage Frank from representing herself. To support this argument, she cites *Worthy*, which concerned the decision of two defendants to waive trial counsel. 583 N.W.2d at 276. *Worthy*—which, again, discusses waiver of *trial* counsel—states that a defendant seeking to waive counsel must be made aware of the perils of self-representation so that the trial record establishes that the defendant understands the significance of the decision. *Id.*

We are not persuaded that the district court here was obligated to warn Frank about the danger of representing herself to ensure that Frank's waiver of counsel was constitutionally valid. Frank cites no other authority for her argument that a district court has a universal obligation to provide such an advisory when a probationer waives counsel at a first appearance for a probation violation. Moreover, in *Worthy*, the supreme court determined that the two defendants challenging the validity of their waivers of trial counsel fully understood the import of their decisions, in part, because they had prior experience with the criminal justice system. *Id.* Frank also has some experience with the criminal justice system. Because this was the fourth time that Frank appeared before the district court to address an alleged probation violation in these two felony cases, we infer from the record that Frank understood the significance of her decision to proceed without counsel.

The particular facts and circumstances in this case lead us to conclude that Frank knowingly, intelligently, and voluntarily waived counsel. *See id.* at 275-76. Thus, her waiver of counsel was constitutionally valid.

## II. Because Frank requested execution of her sentences, the district court was not required to make findings regarding the *Austin* factors.

Frank argues that "[t]he case must be remanded to revisit revocation of [her] probation" because the district court failed to make the findings required under Minnesota law before revoking her probation and executing her prison sentences. *See State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980) (directing district courts to make findings regarding three factors (the *Austin* factors) before revoking probation: (1) the specific condition of probation violated, (2) whether the violation was intentional or inexcusable, and (3) whether the policies favoring probation outweigh the need for confinement); *see also State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005) (remanding to the district court to make findings regarding whether "sufficient evidence exists to support the district court's [probation] revocation"). Although the district court did not make findings regarding the *Austin* factors, we disagree that these findings were required under the circumstances here.

Under Minnesota law, a defendant has the right to demand execution of a stayed prison sentence. *State v. Randolph*, 316 N.W.2d 508, 510-11 (Minn. 1982); *see also* Minn. Stat. § 609.135, subd. 7 (2022) (limiting the right to demand execution to those who are sentenced to more than "nine months at the state institution"). A district court should grant such a demand if "the conditions of probation make probation more onerous than prison and if it cannot be demonstrated that society's interests suffer by vacating the probation

11

sentence." *Randolph*, 316 N.W.2d at 510; *see also State v. Rasinski*, 472 N.W.2d 645, 650 (Minn. 1991) (clarifying that "the 'society's interest' language in *Randolph* [cannot be used as an] independent basis to deny a defendant's request to refuse probation and execute sentence").

While the hearing at issue here began as a first appearance for Frank's fourth probation violation, Frank demanded execution of her sentences during that proceeding—a request she had previously discussed with her probation officer. As the district court recognized, Frank was entitled to serve her prison sentences in lieu of continued probation. Upon Frank's request, the district court did not revoke Frank's probation, but instead granted the request and executed the stayed prison sentences. And a district court is not required to make findings before granting a defendant's request for execution of a stayed sentence. *See generally Randolph*, 316 N.W.2d at 508; *Rasinski*, 472 N.W.2d at 645.

Frank contends that her request for execution of her sentences was invalid because it was made during a probation-revocation proceeding. She also points out that the request was made only after she had admitted to violating her probation, and she suggests that this fact confirms that the district court revoked her probation rather than executed her sentences.

As noted, however, the district court did not state that it was revoking Frank's probation. It acknowledged that Frank had a right to demand execution of her sentences and then executed those sentences. Moreover, Frank does not cite any authority for the proposition that a request for execution of a sentence cannot be made in the context of a

probation-revocation proceeding. And we observe that such a proposition could impair a defendant's right to demand execution of a prison sentence.

We conclude that, because the district court did not revoke Frank's probation as a sanction for the probation violation, the district court was not required to make *Austin* findings. Thus, Frank is not entitled to a remand to the district court for such findings.

**Affirmed.**